Joshua Briones (SBN 205293)
joshua@brionespc.com

**BRIONES PC**
1801 Century Park East, Suite 1840
Los Angeles, CA 90067
Telephone: 858-243-3819

Attorneys for Defendant
TELECOM EVOLUTIONS, LLC

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

SILVIA GARCIA,
Plaintiff,
v.

TELECOM EVOLUTIONS, LLC, a California Entity, d/b/a WWW.PHONEPOWER.COM,
Defendant.

Case No.: 5:25-cv-02487

**DEFENDANT TELECOM EVOLUTIONS, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

Hearing Date: February 20, 2026
Hearing Time: 2:00 pm
Judge: Sunshine Suzanne Sykes
via Zoom

# TABLE OF AUTHORITIES

## CASES

**Pages**

*Byars v. Sterling Jewelers, Inc.*, No. 5:22-cv-01456-SB-SP, 2023 U.S. Dist. LEXIS 61276, at *1 (C.D. Cal. Apr. 5, 2023) ....... 14

*Biesenbach v. Doe*, No. 21-cv-08091-DMR, 2022 U.S. Dist. LEXIS 12686, at *10 (N.D. Cal. Jan. 24, 2022) ....... 17

*Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1059 (C.D. Cal. 2023) ....... 7

*Crano v. Sojern, Inc.*, No. 3:25-cv-02600-JSC, 2025 U.S. Dist. LEXIS 185031, at *19 (N.D. Cal. Sep. 19, 2025) ....... 22

*Doe I v. Google LLC*, 741 F. Supp. 3d 828, 839, 843 n.4 (N.D. Cal. 2024) ....... 7, 22

*Doe v. Eating Recovery Ctr. LLC*, No. 23-cv-05561-VC, 2025 U.S. Dist. LEXIS 207952, at *1, *18, *19 (N.D. Cal. Oct. 17, 2025) ....... 23, 24, 25

*Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1092 (N.D. Cal. 2022) ....... 18

*Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1190 (N.D. Cal. 2020) ....... 15

*Hernandez-Silva v. Instructure, Inc.*, No. 2:25-cv-02711-SB-MAA, 2025 U.S. Dist. LEXIS 153186, at *16 (C.D. Cal. Aug. 4, 2025) ....... 20

*Hill v. Nat'l Collegiate Athletic Assn.*, 865 P.2d 633, 655 (Cal. 1994) ....... 26

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589, 601, 607 (9th Cir. 2020) ....................21, 26

*In re Google RTB Consumer Priv. Litig.*,
606 F. Supp. 3d 935, 947 (N.D. Cal. 2022) ....................27

*In re Zynga Priv. Litig.*,
750 F.3d 1098, 1106, 1108 (9th Cir. 2014) ....................16

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928, 944 n.9 (N.D. Cal. 2023) ....................18

*Khamooshi v. Politico LLC*,
786 F. Supp. 3d 1174, 1181 (N.D. Cal. 2025) ....................15

*King v. Hard Rock Cafe Int'l (USA), Inc.*,
No. 2:24-CV-01119-DC, 2025 WL 1635419, at *4 (E.D. Cal. June 9, 2025) 17

*Kishnani v. Royal Caribbean Cruises Ltd.*,
No. 25-cv-01473-NW, 2025 U.S. Dist. LEXIS 120002, at *3, *8 (N.D. Cal. June 24, 2025) ....................13, 19

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868, 878 (9th Cir. 2002) ....................16

*Kwan v. SanMedica Int'l*,
854 F.3d 1088, 1093 (9th Cir. 2017) ....................17

*Licea v. Hickory Farms LLC*,
2024 Cal. Super. LEXIS 66498, *10 (Cal. Super. Mar. 13, 2024) ....................25

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) ....................28

*Marcus v. CDC & Prevention*,
No. 2:22-cv-02383-SSS-ASx, 2024 U.S. Dist. LEXIS 105514, at *6 (C.D. Cal. June 12, 2024) ....................11

*Maya v. Centex Corp.*,
658 F. 3d 1060, 1067 (9th Cir. 2011) ....................15

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855, 864 (S.D. Cal. 2023)....................................................14

*Mitchener v. Talkspace Network LLC*,
No. 2:24-cv-07067-JAK (BFMx), 2025 U.S. Dist. LEXIS 127525, at *22 (C.D. Cal. June 27, 2025) ....................................................................14

*NovelPoster v. Javitch Canfield Grp.*,
140 F. Supp. 3d 938, 951 (N.D. Cal. 2014) ...................................................20

*Palacios v. Fandom, Inc.*,
2024 Cal. Super. LEXIS 61790, *7 (Cal. Super. Sep. 24, 2024).....................25

*Planned Parenthood Fed'n of* Am., *Inc. v. Newman*,
51 F.4th 1125, 1136 (9th Cir. 2022) ..........................................................22

*Popa v. Microsoft Corp.*,
153 F.4th 784, 791, 794 (9th Cir. 2025) ......................................................11

*Rodriguez v. Autotrader.Com, Inc.*,
No. 2:24-cv-08735-RGK-JC, 2025 U.S. Dist. LEXIS 70074, at *2 (C.D. Cal. Apr. 4, 2025)........................................................................................12

*Roe v. Amgen Inc.*,
No. 2:23-cv-07448-MCS-SSC, 2024 U.S. Dist. LEXIS 101754, at *15 (C.D. Cal. June 5, 2024) ........................................................................21

*Sams v. Yahoo! Inc.*,
713 F.3d 1175, 1179 (9th Cir. 2013) ..........................................................21

*Sanchez v. Cars.Com Inc.*,
2025 Cal. Super. LEXIS 710, *8 (Cal. Super. Jan. 27, 2025) .........................23

*Spencer v. Kemna*,
523 U.S. 1, 11 (1998).................................................................................11

*United States v. Forrester*,
512 F.3d 500, 510 (9th Cir. 2008) ..............................................................14

## STATUTES

**Pages**


18 U.S.C. § 2510(4) ........................................ 16

18 U.S.C. § 2510(8) ........................................ 16

18 U.S.C. § 2511 ........................................ 5, 15, 21, 23

Cal. Pen. Code § 631(a) ........................................ 20

Cal. Pen. Code § 638.51 ........................................ 5, 23

Cal. Pen. Code § 638.52(d)(1) ........................................ 23

Cal. Pen. Code, §§ 630, et seq. ........................................ 24

S.B. 690, 2025–2026 Reg. Sess. (Cal. 2025) ........................................ 24

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on February 20, 2026, at 2:00 p.m., or as soon thereafter as the matter may be heard, by video appearance on Zoom, Defendant Telecom Evolutions, LLC ("Telecom") will and hereby does move this Court for an order dismissing the Complaint filed by Plaintiff Silvia Garcia ("Plaintiff") in its entirety and with prejudice. This Motion is made pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on the grounds that Plaintiff has not established Article III standing to bring her claims and otherwise fails to state a claim against Telecom upon which relief can be granted.

Specifically, Telecom seeks dismissal of the Complaint on the following grounds:

1. Plaintiff lacks Article III standing to bring her claims because, as a self-described "tester," she cannot plausibly claim a reasonable expectation of privacy and has not alleged any concrete or particularized personal injury traceable to Telecom.

2. Plaintiff fails to state a claim under the Federal Wiretap Act, 18 U.S.C. § 2511, because (a) Plaintiff does not (and cannot under the circumstances) allege, as required, an interception of the "contents" of her communications by Telecom; (b) Plaintiff does not (and cannot under the circumstances) allege, as required, a contemporaneous interception of the contents of communications while they are "in transit" with Telecom; and (c) no claim under the Federal Wiretap Act is valid where, as here, one of the parties (in this case Telecom) consented to the alleged wiretap.

3. Plaintiff fails to state a claim for a violation of the California Invasion of Privacy Act, Cal. Pen. Code § 638.51, because the use of pixels on a website, as alleged by Plaintiff, does not equate to the use of a trap and trace

device.

4. Lastly, Plaintiff fails to state a California common law claim based on "intrusion upon seclusion" because Plaintiff fails to allege (a) a reasonable expectation of privacy required to bring such a claim; or (b) that a highly offensive intrusion occurred.

This Motion is based on this Notice of Motion and Motion; the attached Memorandum of Points and Authorities in support of the Motion; the Complaint and all of the other pleadings and papers on file in this action; all matters which the Court may take judicial notice of; and any further oral or documentary evidence presented to the Court at or prior to the hearing on this Motion.

This Motion is made following a telephonic conference of counsel conducted pursuant to Local Rule 7-3, which took place on December 4, 2025, continued through an exchange of written communications on December 17, 2025 through December 30, 2025, and another telephone conference on January 2, 2026. The parties were unable to reach a resolution eliminating the necessity of Telecom's motion.

DATED: January 7, 2026

**BRIONES PC**

By: */s/ Joshua Briones*

Joshua Briones

joshua@brionespc.com
1801 Century Park East
Suite 1840
Los Angeles, CA 90067
Telephone: 858-243-3819

Attorneys for Defendant

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

As another court in this District has recognized, Plaintiff's counsel is a "serial litigant[] bringing numerous 'cookie cutter' lawsuits under CIPA against various businesses that operate websites." *Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1059 (C.D. Cal. 2023).[1] Like complaints of a similar ilk mass-produced by Plaintiff's counsel, this one is fatally inadequate and does not pass the pleading bar for a wide variety of reasons.

In this case, Plaintiff—a purported "tester" and "consumer privacy advocate" (Compl. ¶ 21)—has trained her focus on Telecom and has alleged that it violated the Federal Wiretap Act (*id.* ¶¶ 41-46), the California Invasion of Privacy Act ("CIPA") (*id.* ¶¶ 47-53), and California common law for intrusion upon seclusion (*id.* ¶¶ 54-56) because of the alleged placement of a Tapad pixel on phonepower.com, a website Telecom purportedly operates (the "Website"). However, the Complaint is built upon generic descriptions about how Tapad pixels may work in the abstract (¶¶ 12-16), as well as conclusory allegations about what information Tapad pixels purportedly collect.

Generic descriptions of how a product "could be used in ways that could result in privacy violations," not coupled with specific factual allegations regarding how the product is actually used and actually harmed a visitor to a website, are insufficient to state a claim for such privacy violations. *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 839 (N.D. Cal. 2024). Accordingly, courts routinely dismiss complaints in privacy lawsuits that are based on "broad, generalized allegations about" defendants' websites or applications but "offer[] scant detail about [p]laintiffs' own experiences with any of them." *Hernandez-*

1 Plaintiff herself is also a serial litigant, teaming up with opposing counsel to file over a dozen lawsuits in this District alone.

*Silva v. Instructure, Inc.*, No. 2:25-CV-02711-SB, 2025 WL 2233210, at *2 (C.D. Cal. Aug. 4, 2025).

Such is the case here, and the lack of any detail about how a Tapad pixel was supposedly configured to work on the Website, what information it purportedly collected from Plaintiff, how Plaintiff interacted with the Website, as well as the absence of other critical facts in the Complaint, make four things abundantly clear:

* First, Plaintiff lacks Article III standing to bring her claims because, in addition to the fact that there is no reasonable expectation of privacy for "testers" like Plaintiff who claim self-engineered injuries in the manner Plaintiff has, Plaintiff fails to allege facts showing she sustained any injury due to Telecom's conduct, let alone the type of concrete and particularized injury one must plead in order to establish standing to pursue claims in federal court.

* Second, Plaintiff has failed to allege fundamental facts necessary to state a claim that Telecom has engaged in illegal wiretapping under the Federal Wiretap Act by allegedly placing a pixel on the Website, a flaw Plaintiff cannot remedy because the use of the tracking technology alleged does not qualify, as a matter of fact and law, as a contemporaneous interception of contents of a communication covered by the Federal Wiretap Act. Moreover, even if that were not so, Telecom consented to the communications at issue, which invalidates the possible presence of an illegal wiretap involving two non-consenting parties.

* Third, Plaintiff has failed to allege a CIPA claim because, as recognized by the California legislature and a growing number of courts, both federal and state, pixels operating on a website in the manner alleged by Plaintiff do not act as a trap and trace device and should not be treated as such under the CIPA.

* Finally, Plaintiff's vague and boilerplate assertions fail to state a claim for intrusion upon seclusion under California common law because Plaintiff had no reasonable expectation of privacy when she visited the Website in search of the grounds to bring this lawsuit and because she fails to allege any facts showing she suffered a "highly offensive intrusion" when doing so.

Thus, from any angle, Plaintiff's cookie-cutter lawsuit fails to state the claims alleged, and Plaintiff lacks standing to bring them in any event. Accordingly, for the reasons explained more fully below, Plaintiff's claims should be dismissed.

## II. RELEVANT FACTS

The most notable aspect of the Complaint is how little it has to say about either Plaintiff or Telecom. According to Plaintiff, Telecom owns, operates, and controls the website phonepower.com (Compl. ¶¶ 1, 10) and installed the Tapad tracking pixel on the Website. *Id.* ¶ 11. The Complaint adds that, Plaintiff, a self-claimed "consumer privacy advocate who works as a 'tester,'" allegedly visited the Website at some unspecified time "within the statute of limitations period." *Id.* ¶¶ 20,21. That is the full extent of the Complaint's allegations involving the actions allegedly taken by Plaintiff and Telecom and any overlap of their conduct.

Plaintiff devotes most of the Complaint to vaguely addressing Tapad, which she alleges is a "notorious data broker." *Id.* ¶¶ 18, 30. In doing so, however, Plaintiff fails to explain how Telecom's alleged involvement with Tapad infringed upon her privacy, opting instead to claim, in a completely generic manner, that Tapad "compile[s] and sell[s] deeply personal details about visitors" to the Website (*id.* ¶ 1) without identifying what, if any, "deeply personal details" concerning Plaintiff were allegedly collected by Tapad. Indeed, none of Plaintiff's allegations explain how she was impacted by the

alleged presence of a Tapad pixel on the Website and instead merely hypothesizes how Tapad pixels work in the abstract, claiming they operate by matching users across devices (*id.* ¶ 16) and do so with information about the user's devices, operating systems, IP addresses, and browser type, as well as screen resolution, and fonts—types of information Plaintiff fails in any way to identify as deeply personal to her. *Id.* ¶ 16.

In places, Plaintiff's wholly generic allegations in the Complaint contradict themselves. For instance, on the one hand, she alleges that Tapad captures "dialing, routing, addressing, and signaling information that identifies the source of the user's electronic communication" (*id.* ¶ 26); while on the other hand, she claims Tapad collects the content of communications, including "name, contact information, location data, browsing behavior, device fingerprints, and interests." *Id.* ¶ 31. Even more perplexing (and likely due to the "cut and paste" nature of this lawsuit), Plaintiff alleges that by visiting phonepower.com, a website featuring telephone plans, "health-related browsing" somehow comes into the scope of "the data at issue" in this case.

Based on nothing more than the above allegations, Plaintiff has asserted claims against Telecom for violations of the Federal Wiretap Act, the CIPA, and California common law for intrusion upon seclusion.

## III. LEGAL STANDARDS

### A. FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a district court may dismiss an action for lack of subject matter jurisdiction. *Chandler v. State Farm Mut. Auto. Inc. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). At the core of this jurisdictional inquiry is whether a plaintiff has established standing under Article III of the United States Constitution, which, among other conditions,

requires a plaintiff to allege she has "suffered an injury in fact." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). A statutory violation alone does not confer standing without a showing of concrete, particularized, and actual or imminent harm. *Popa v. Microsoft Corp.*, 153 F.4th 784, 794 (9th Cir. 2025) (noting that "individual circumstances giv[e] rise to the plaintiffs' alleged injuries rather than simply greenlighting a per se rule for privacy statutes").

When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff has the burden of establishing jurisdiction to survive the motion and must "clearly . . . allege facts demonstrating that [s]he is a proper party to invoke judicial resolution of the dispute." *Spencer v. Kemna*, 523 U.S. 1, 11 (1998) (internal quotation and citation omitted).

**B. FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

Under Federal of Civil Procedure 12(b)(6), a court may properly dismiss a claim if "plaintiff fails to state a cognizable legal theory or fails to allege sufficient factual support for [her] legal theories." *Marcus v. CDC & Prevention*, No. 2:22-cv-02383-SSS-ASx, 2024 U.S. Dist. LEXIS 105514, at *6 (C.D. Cal. June 12, 2024) (internal quotation and citation omitted). To survive a motion to dismiss under Rule 12(b)(6), "a plaintiff must allege sufficient facts to state a claim to relief that is plausible on its face." *Id.* (internal quotation and citations omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' *Id.* at, *21 (internal quotations and citations omitted).

## IV. ARGUMENT

Each of Plaintiff's three claims share the same fundamental flaw: each relies on only vague allegations completely disconnected from her own visit to the Website. As noted above, her factual assertions that are unique to her

particular claims in the Complaint—as opposed to verbatim accusations common to the dozens of other cookie-cutter complaints Plaintiff's counsel has filed in this jurisdiction—are limited to less than a handful of paragraphs, and those sparse allegations fail to establish the essential elements of her claims. Accordingly, each claim in the Complaint should be dismissed for the reasons set forth below.

### A. PLAINTIFF LACKS ARTICLE III STANDING

As an initial matter, the Complaint should be dismissed pursuant to Rule 12(b)(1) for failure to allege facts establishing Article III standing, because (1) "tester" litigants such as Plaintiff cannot claim a reasonable expectation of privacy or an injury-in-fact required to establish standing; and (2) Plaintiff has failed to allege facts showing she suffered ***any injury***, let alone a personal, concrete injury sufficient to establish standing.

#### 1. There is No Reasonable Expectation of Privacy for "Testers" Like Plaintiff Who Claim Self-Engineered Injuries

As an initial, dispositive matter in this case, courts in this very district have held that a tester, like Plaintiff here, who "actively seeks out privacy violations" cannot claim a reasonable expectation of privacy or injury-in-fact required to establish Article III standing when they claim self-engineered injuries resulting from their conduct as a "tester." *Rodriguez v. Autotrader.Com, Inc.*, No. 2:24-cv-08735-RGK-JC, 2025 U.S. Dist. LEXIS 70074, at *2 (C.D. Cal. Apr. 4, 2025) (dismissing privacy claims for lack of standing because the tester plaintiff lacked a reasonable expectation of privacy and therefore suffered no injury-in-fact).

Plaintiff is no ordinary consumer; she labels herself a "consumer privacy advocate" and "tester" (Compl. ¶ 21), and she visited the Website for the

express purpose of testing it to concoct a complaint based on supposed (but completely undefined) harm she sought to have inflicted on her. Courts have rejected such self-orchestrated "injuries" as supporting standing to bring a lawsuit. *See Rodriguez v. Autotrader.com, Inc.*, *supra*. Since Plaintiff deliberately manufactured her supposed privacy injury, she cannot establish standing based on a self-created injury.

**2. Plaintiff Fails to Allege a Concrete Injury**

Even if one ignores her "tester" status, Plaintiff still lacks standing because she does not allege any facts about her visit to the Website or any information collected from her, let alone any information that, if collected, would rise to the level of an invasion of her privacy. Specifically, Plaintiff does not allege: (1) how many times she visited the Website; (2) what "electronic impulses" of hers were captured (if any) when she visited the Website; (3) what information those electronic impulses allegedly contained; (4) how she got to the Website; (5) what (if anything) she purchased during her visit or visits to the Website; (6) whether she ventured beyond the homepage of the Website; or (7) whether she entered any personal or identifying information into the Website.

Plaintiff's ***only*** allegation concerning her interactions with the Website is that she "visited the Website on Plaintiff's personal device and web browser within the statute of limitations period." Compl. ¶ 20. The rest of the allegations Plaintiff offers amount to no more than generalized claims about information a Tadpad pixel may be capable of collecting, untethered to Plaintiff's own experience. Such speculation cannot establish the concrete injury required to confer standing because it does not show what information, if any, was actually collected from Plaintiff or that it caused her actual harm. *Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-cv-01473-NW, 2025 U.S. Dist. LEXIS 120002, at *8 (N.D. Cal. June 24, 2025) (holding that an allegation that a defendant

"*could* gain" information from a plaintiff through use of a technology does not plead a concrete injury).

Without alleging that specific personal information was collected or disclosed as a result of Plaintiff's visit to the Website, Plaintiff lacks standing. *See, e.g.*, *Popa v. Microsoft Corp.*, 153 F.4th at 791 (recognizing that standing requires a plaintiff-specific inquiry tied to a common-law analogy and finding no "highly offensive" harm where a plaintiff failed to allege the collection of private/sensitive information); *Byars v. Sterling Jewelers, Inc.*, No. 5:22-cv-01456-SB-SP, 2023 U.S. Dist. LEXIS 61276, at *1 (C.D. Cal. Apr. 5, 2023) (no standing where "plaintiff does not identify any personal or sensitive information she disclosed on the website"); *Mitchener v. Talkspace Network LLC*, No. 2:24-cv-07067-JAK (BFMx), 2025 U.S. Dist. LEXIS 127525, at *22 (C.D. Cal. June 27, 2025) (finding no standing where the complaint failed to allege any personal information from the plaintiff was collected); *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023) ("Plaintiff's conclusory allegation that she disclosed 'personal information' does not allow the Court to determine whether Plaintiff has a protectable privacy interest in that information.").

Furthermore, Plaintiff's sparce allegations about a single visit she made to the Website—likely at counsel's direction—supports, at best, the inference that her IP address and perhaps similar metadata may have been collected on the Website. While the Complaint broadly claims the pixel allegedly installed on the Website may have captured a wider variety of information, her boilerplate allegations lack any factual support in this regard. Courts routinely hold that the collection of metadata (such as IP addresses), routinely exchanged during browsing, does not implicate a privacy interest or constitute a concrete injury. *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir 2008) ("Internet users

have no expectation of privacy in the . . . IP addresses of the websites they visit"); *Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1181 (N.D. Cal. 2025) ("the information at issue here—an IP address—is not sufficiently private or personal to be analogous to the type of harm recognized in traditional privacy torts"); *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1190 (N.D. Cal. 2020) ("There is no legally protected privacy interest in IP addresses alone."). In sum, without alleging facts showing she sustained a concrete harm, Plaintiff cannot satisfy the injury-in-fact requirement to establish standing. She has not done so here. Therefore, the Complaint must be dismissed. *Maya v. Centex Corp.*, 658 F. 3d 1060, 1067 (9th Cir. 2011) ("lack of Article III standing requires dismissal").

### B. PLAINTIFF'S FEDERAL WIRETAP ACT CLAIM FAILS

To state a claim under the Federal Wiretap Act, Plaintiff "must plausibly allege [Telecom] (1) intentionally (2) intercepted (3) the contents of (4) plaintiff's electronic communications (5) using a device." *Doe I*, 741 F. Supp. 3d at 842. Plaintiff fails to state such a claim because the alleged use of pixel tracking technology does not qualify as an "interception" of a "communication" under the Federal Wiretap Act. In this vein, Plaintiff's scant allegations do not plead an "interception," because Plaintiff has not alleged that the placement of a pixel on the Website resulted in the acquisition of the contents of any communication, let alone the acquisition of the contents of any communication during the transmission of a communication. Moreover, as the Complaint makes clear, even had the placement of a pixel on the Website resulted in what qualifies as an "interception" under the Act, any such interception would not have violated the Act because, under 18 U.S.C. § 2511(2)(d), Telecom consented to such interceptions as a party to its communications with Plaintiff.

#### 1. Plaintiff's Federal Wiretap Act Claim Fails Because She

**Has Not Alleged an Interception of a Communication in a Manner That Violates That Statute**

An "interception" governed by the Federal Wiretap Act means "the aural or other acquisition of the ***contents*** of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4) (emphasis added). Interpreting this term based on its ordinary meaning and legislative background, the Ninth Circuit has further held that, in order for an interception subject to the Act to occur, the contents of the communication at issue "must be acquired ***during transmission***, not while it is in electronic storage." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) (emphasis added). As Plaintiff alleges neither an acquisition of the "contents" of any communication, nor any acquisition "during [the communication's] transmission," her claim under the Wiretap Act must fail.

**(a) Plaintiff Fails to Allege the Interception of the "Contents" of Any Communication Through Use of Any Pixel on the Website**

Plaintiff's Wiretap Act claim fails because it lacks any factual allegations showing that any "contents" of her communications with the Website were intercepted. The Act defines the "contents" of an electronic communication as "information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8). As further clarified by the Ninth Circuit, that term covers "the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). Such unprotected "record information" includes the "identity of the parties to [a] communication" and where the communication originates. *Id.*

In the context of Internet usage, whether a user's communication with a

website includes her "intended message" or only "record information" depends on what the communication is about. *Id*. at 1108. For instance, where a "Google search URL not only shows that a user is using the Google search engine, but also shows the specific search terms the user had communicated to Google," that URL has contents because "divulging a URL containing that search term to a third party could amount to disclosure of the contents of a communication." *Id*. at 1108–09. On the other hand, a URL that "includes only basic identification and address information, not a search term or similar communication made by the user . . . does not constitute the contents of a communication." *Id*. at 1109; accord *King v. Hard Rock Cafe Int'l (USA), Inc.*, No. 2:24-CV-01119-DC, 2025 WL 1635419, at *4 (E.D. Cal. June 9, 2025) ("To the extent Plaintiff alleges Meta intercepted 'guest records' including the address, telephone number, email address, or zip code of Website users, those allegations are insufficient because that information constitutes 'record information'").

Plaintiff fails to allege the acquisition of the contents of her communication with the Website. She provides no information at all about her alleged interaction with the Website, other than that she visited it at some point "within the statute of limitations." Compl. ¶ 21. She also fails to identify any communications she had with the Website or any message she intended to convey, let alone any communication intercepted by any pixel on the Website. This "absence of sufficient facts alleged under a cognizable legal theory" alone warrants dismissal of her Federal Wiretap Act claim. *See Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1093 (9th Cir. 2017) accord *Biesenbach v. Doe*, No. 21-cv-08091-DMR, 2022 U.S. Dist. LEXIS 12686, at *10 (N.D. Cal. Jan. 24, 2022) (dismissing Wiretap Act claim because plaintiff "fail[ed] to allege that [d]efendants acquired, i.e., captured or redirected, the contents of any communications").

Worse yet, Plaintiff's Wiretap Act claim is fatally flawed on its face because Plaintiff admits that the Tapad pixel purportedly installed on the Website only intercepts record information. In this regard, Plaintiff alleges that the Tapad pixel purportedly on the Website helped Telecom identify Website visitors, using information like IP address, browser type, operation system information, screen resolution, time zone, routing, addressing, and other signaling information. Compl. ¶¶ 16, 31, 51. Such information is "record information" because Plaintiff never claims she intended to convey such information to the Website. Indeed, as courts have repeatedly held, all these categories of information constitute "record information" falling outside of the Wiretap Act's coverage. *See Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 944 n.9 (N.D. Cal. 2023) ("[W]ebpage titles, webpage keywords, the date and times of website visits, IP addresses, page visits, purchase intent signals, and add-to-cart actions" are "record information that does not constitute 'content' under the ECPA"); *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1092 (N.D. Cal. 2022) ("[C]ustomer information such as a person's name, address, and subscriber number or identity is record information" unless "it is part of the substance of the message conveyed to the recipient")[2]. And ironically, Plaintiff must make this admission that the pixel allegedly placed on the Website only intercepts "record information," as opposed to the contents of communication, because her attempt to characterize that pixel as a trap and trace device is central to her CIPA claim and, "[b]y definition, a trap and trace device captures identifying information about a communication but not ***the contents of a***

2 Plaintiff's single mention of Tapad's purported ability to collect "URL referrer paths, Compl. ¶ 26, does not save this claim, because Plaintiff does not allege these URLs contain any information she intended to convey to the Website, such as search terms. *See Hammerling*, 615 F. Supp. 3d at 1093 ("URLs are record information when they only reveal a general webpage address and basic identification information, but when they reproduce a person's personal search engine queries, they are contents").

***communication***." *Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-cv-01473-NW, 2025 U.S. Dist. LEXIS 120002, at *3 (N.D. Cal. June 24, 2025) (emphasis added); accord *In re Zynga Priv. Litig.*, 750 F.3d at 1108 (holding "the warrantless installation of pen registers, which capture only the telephone numbers that are dialed and not the calls themselves" reveals only record information and not contents of the calls).

Accordingly, the Court should dismiss Plaintiff's Federal Wiretap Act claim because she fails to allege her visit to the Website resulted in the acquisition of the contents of any communication.

**(b) Plaintiff Fails to Allege a Contemporaneous Interception of the Contents of Any Communication**

Even assuming Plaintiff has adequately pled that a pixel on the Website acquired the contents of her communication with the Website, her Wiretap claim still fails because she has not alleged the acquisition occurred "during transmission" of any communication, that is, "before" the communication's "arrival" at its intended destination. *Konop*, 302 F.3d at 878 (9th Cir. 2002).

Plaintiff's only allegations to that effect are conclusory labels that recite this element of the cause of action. Compl. ¶ 43 (labelling the alleged interception as occurring "contemporaneously with the transmission"). However, when it comes to describing how the asserted "contemporaneous" interception happened, the Complaint is silent as to that critical element. For instance, Plaintiff alleges that "Tapad Tracking Pixel gathers data about visitor interaction with a website by tracking signals generated by website visitor actions like page visits, purchases, and video views" and then "combines that data with its proprietary algorithm to track visitors." *Id.* ¶ 13. Plaintiff, however, does not allege that this analysis happened before her communication

arrived at the Website. Rather, she alleges that, after the analysis was done, websites and applications using Tapad could "then cater their advertisements based on a collective knowledge of the user's actions." *Id*. "Given the speed of [the Internet], the Wiretap Act's application to that form of electronic communication is undoubtedly limited." *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 951 (N.D. Cal. 2014). Indeed, as stated above, Plaintiff not only fails to plausibly allege that Tapad acquired the contents of Plaintiff's communication with the Website "during transmission," she instead suggests that any such acquisition happened after the communications took place.

In a similar case involving the Wiretap Act's counterpart under the CIPA, which prohibits the "learn[ing of] the contents or meaning of any message, report, or communication while the same is in transit," Cal. Pen. Code § 631(a), another court in this District dismissed the claim because of the plaintiff's vague allegations about contemporaneous interception:

> Learning the content of a communication after it has been sent is not eavesdropping; and Plaintiffs' allegations, as currently pleaded, merely suggest that third parties gain access to student users' communications at some point, not that third parties "secretly listen" to the communication as it is being transmitted from the students to Defendant.

*Hernandez-Silva v. Instructure, Inc.*, No. 2:25-cv-02711-SB-MAA, 2025 U.S. Dist. LEXIS 153186, at *16 (C.D. Cal. Aug. 4, 2025). The same result is warranted here. Plaintiff offers no facts, only buzzwords, to suggest a third-party intercepted communications before they reached the Website, and without alleging facts showing the required contemporaneous interception, Plaintiff's Federal Wiretap Act claim fails.

**(c) To the Extent There Was Any "Interception" Here, Plaintiff's Wiretap Act Claim Is Still Barred Because Telecom Consented to It**

Under 18 U.S.C. § 2511(2)(d), no unlawful interception occurs "where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." Accord *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020) (recognizing that the Wiretap Act "contain[s] an exemption from liability for a person who is a 'party' to the communication, whether acting under the color of law or not"). Plaintiff's allegations "suffice to establish th[is] defense" for Telecom. *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013). She alleges Telecom was a party to her allegedly intercepted communication over the Website. Compl. ¶ 1 ("Defendant owns, operates, and controls the Website."); *id.* ¶ 41 (alleging interception of "communications between Plaintiff and the Website"). Plaintiff further asserts Telecom allegedly gave prior consent to intercepting such communications by "install[ing]" Tapad pixels on its website (*id.* ¶ 11) and "allow[ing]" Tapad to collect visitors' information. *Id.* ¶ 15. Plaintiff's allegations are thus "self-defeating," because they are "only susceptible to an inference that Defendant, as the creator and operator of its website, consented to the use of data collection tools it installed on its website." *Roe v. Amgen Inc.*, No. 2:23-cv-07448-MCS-SSC, 2024 U.S. Dist. LEXIS 101754, at *15 (C.D. Cal. June 5, 2024).

Furthermore, Plaintiff fails to properly invoke the so-called crime-tort exception that would invalidate this plainly applicable defense to Plaintiff's Wiretap Act claim. As the Ninth Circuit has repeatedly held, for that exception

to apply, the defendant must have a "criminal or tortious purpose . . . separate and independent from the act of the recording." *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022). Aside from the need to establish the independence requirement, a plaintiff also may not invoke the exception with an inadequately pleaded crime or tort. *Crano v. Sojern, Inc.*, No. 3:25-cv-02600-JSC, 2025 U.S. Dist. LEXIS 185031, at *19 (N.D. Cal. Sep. 19, 2025) ("Plaintiff's CIPA claim is inadequately pled and thus does not provide a basis for the crime-tort exception").

Plaintiff's attempt to invoke the crime-tort exception fails exactly for these reasons. She asserts the exception applies because Telecom allegedly facilitated Tapad's interception for the purpose of committing the tort of intrusion upon seclusion on her. Compl. ¶ 45. However, as she pleads that tort claim, it is premised on the exact same conduct as the alleged interception, rather than "separate and independent from" it. *Planned Parenthood*, 51 F.4th at 1136; Compl. ¶ 45. Further, Plaintiff alleges—albeit falsely—that Telecom intercepted her communication to make profits (Compl. ¶¶ 3, 38-39), and that allegation alone forecloses the application of the crime-tort exception. *Doe v. Google LLC*, 741 F. Supp. 3d at 843 n.4 (refusing to apply the exception because "Google's purpose in offering these products has plainly not been to perpetuate torts on millions of Internet users, but to make money"); *Roe v. Amgen Inc.*, 2024 U.S. Dist. LEXIS, at *15 ("the crime-tort exception is inapplicable where a defendant's primary motivation is to make money rather than to injure plaintiffs tortiously or criminally"). Finally, Plaintiff fails to state a claim for intrusion upon seclusion for the reasons discussed below. Accordingly, the Court should rule that the crime-tort exception Plaintiff improperly attempts to invoke does not apply here and that Plaintiff's Federal

Wiretap Act claim is barred by Telecom's consent [3].

### C. PLAINTIFF'S CIPA CLAIM FAILS

Plaintiff's CIPA claim under California Penal Code § 638.51(a) is premised entirely on the theory that Tapad pixels allegedly placed on the Website acted as a trap and trace device. Because they did not, this claim fails.

The CIPA "was enacted in 1967 to criminalize wiretapping and eavesdropping on confidential communications." *Doe v. Eating Recovery Ctr. LLC*, No. 23-cv-05561-VC, 2025 U.S. Dist. LEXIS 207952, at *1 (N.D. Cal. Oct. 17, 2025). In 2015, when the California legislature introduced § 638.51(a), the provision governing pen registers and track and trace devices, it intended to "create a comprehensive framework governing how California law enforcement officials could obtain and use" these devices," *Sanchez v. Cars.Com Inc.*, 2025 Cal. Super. LEXIS 710, *8 (Cal. Super. Jan. 27, 2025), based on an understanding that they operate on "telephone line[s]." Cal. Pen. Code § 638.52(d)(1) (requiring magistrate's order authorizing the use of a pen register or trace and track device specify "[t]he identity, if known, of the person to whom is leased or in whose name is listed the telephone line to which the pen

3 Plaintiff tries to salvage the exception by suggesting Telecom "exceeded any purported authorization" in giving the consent "by misrepresenting the nature of the data collection and the identity of the third-party recipients." Compl. ¶ 44. This argument must also be rejected. First, it finds no place in the text of 18 U.S.C. § 2511(2)(d). Even if one disregards the statute's clear text, that argument still fails because when a plaintiff "include[s] fraud-based allegations to avoid dismissal of [her Wiretap] claim based on consent," the "Rule 9(b) pleading standard" applies "to these fraud-based allegations." *Doe I*, 741 F. Supp. 3d at 842–43. Plaintiff's allegations fall far short of identifying "the who, what, when, where and how of the misconduct charged." *Choi v. 8th Bridge Capital, Inc.*, No. 2:17-cv-08958-CAS (AFMx), 2018 U.S. Dist. LEXIS 118421, at *16 (C.D. Cal. July 16, 2018). For instance, the Complaint "does not allege, nor is it reasonable to infer from its allegations, that [P]laintiff[] actually read" Telecom's alleged representations. *Cherkin v. PowerSchool Holdings, Inc.*, No. 24-cv-02706-JD, 2025 U.S. Dist. LEXIS 48424, at *12-13 (N.D. Cal. Mar. 17, 2025); *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.,* 753 F. Supp. 3d 849, 920 (N.D. Cal. 2024) ("[T]o satisfy Rule 9(b), a plaintiff[] must allege that they "read and relied on a specific misrepresentation.").

register or trap and trace device is to be attached").

Section 638.50(c) defines a trap and trace device as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." Although some non-binding decisions have read § 638.50(c) mechanically to cover technologies like pixels in the context of activity taking place on the Internet, more and more courts have correctly cautioned against such an expansive interpretation. As one federal court very recently recognized, the concomitant criminal consequences and the ill-fit between the CIPA's language and Internet communications counsel against applying the CIPA to pixels, especially given that California has more recently "adopted other statutes that more clearly speak to the practice of data sharing." *Doe v. Eating Recovery Ctr. LLC*, 2025 U.S. Dist. LEXIS, at *18. Furthermore, the California legislature is in the process of passing a bipartisan bill that will spell out under § 638.50(c) that "[a] trap and trace device does not include a device or process that is used in a manner consistent with a commercial business purpose." S.B. 690, 2025–2026 Reg. Sess. (Cal. 2025).

Along these lines, California state courts have held their state law should not be read to capture tracking pixels as track and trace devices. In *Sanchez*, for example, the court reached the following conclusion after a comprehensive review of § 638.51's legislative history:

> Generally, CIPA criminalizes wiretapping, eavesdropping, interception or recording of telephone communications without authorization from a court. (Cal. Pen. Code, §§ 630, *et seq.)* Here, the legislative history of the CIPA suggests that 'pen register' and 'track and trace devices' refers to devices or processes that are used to record or decode dialing, routing, addressing, or signaling information from telephone numbers, not internet communications

> such as websites. Penal Code section 638.51 and its legislative history suggest that section 638.51 applies only to telephone-tracking technology, not IP address-collecting software used by a website to improve its user functionality and the effectiveness of its marketing. The California legislature enacted Assembly Bill 929, the genesis of CIPA section 638.51, in 2015 to create a comprehensive framework governing how California law enforcement officials could obtain and use a pen register or trap and trace device, just like its federal counterpart. In enacting Assembly Bill 929, the California Legislature adopted the same authorization provision in CIPA section 638.52 that courts have relied on under the federal Pen Register Act to find that the Act applied only to mechanical, telephone number-tracing technology, not technology used to collect the IP address from a desktop computer. Thus, the legislative history of the CIPA suggests that 'pen register' and 'track and trace devices' refer to devices or processes that are used to record or decode dialing, routing, addressing, or signaling information from telephone numbers, and not internet communications such as websites.

2025 Cal. Super. LEXIS, at, *8; *Palacios v. Fandom, Inc.*, 2024 Cal. Super. LEXIS 61790, *7 (Cal. Super. Sep. 24, 2024) (arriving at the same conclusion on a claim seeking to apply § 638.51's prohibition on pen registers to internet communications); *Licea v. Hickory Farms LLC*, 2024 Cal. Super. LEXIS 66498, *10 (Cal. Super. Mar. 13, 2024) (noting that California's public policy prohibits the "broad based interpretation" proposed by plaintiff, because it "would potentially disrupt a large swath of internet commerce without further refinement as the precise basis of liability").

The California legislature has provided its clear guidance that pixels used on websites should not be construed as unauthorized trap and trace devices and so have California courts. Given this fact, this Court "should not contort [itself] to fit the type of conduct alleged in this case into" a statute that is not meant to govern it. *Doe v. Eating Recovery Ctr. LLC*, 2025 U.S. Dist. LEXIS, at *19.

### D. PLAINTIFF FAILS TO STATE A CLAIM FOR INTRUSION UPON SECLUSION

Lastly, the Court should dismiss Plaintiff's claim for intrusion upon seclusion. "To state a claim for intrusion upon seclusion under California common law, a plaintiff must plead that (1) a defendant "intentionally intruded into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy; and (2) the intrusion occurred in a manner highly offensive to a reasonable person." *In re Facebook*, 956 F.3d at 601. Here, Plaintiff's claim fails because her self-granted status of a "tester," Compl. ¶ 21, and failure to identify any "deeply personal details" Tapad allegedly collected about her, *id*. ¶ 1, doom her ability to plead either element of this claim.

#### 1. Plaintiff Fails to Allege a Reasonable Expectation of Privacy.

"A reasonable expectation of privacy is an objective entitlement founded on broadly based and widely accepted community norms." *Hill v. Nat'l Collegiate Athletic Assn.*, 865 P.2d 633, 655 (Cal. 1994). And "customs, practices, and physical settings surrounding particular activities may create or inhibit reasonable expectations of privacy." *Id*. As noted above, when a privacy tester like Plaintiff "visit[s] and enter[s] information into [a] website expecting [her] information to be accessed, recorded, and disclosed," she cannot claim a reasonable expectation to the contrary. *Rodriguez v. Autotrader.Com, Inc.*, 2025 U.S. Dist. LEXIS 70074, at *3; *Byars v. Sterling Jewelers, Inc.*, 2023 U.S. Dist. LEXIS 61276, at *9 (holding that the tester-plaintiff did not allege a reasonable expectation of privacy because "she fully expected that her chat would be recorded so that she could file this action"). In short, Plaintiff's alleged status as a "tester" hunting down ways for her to be "injured" to provide the premise for a lawsuit alone refutes any claim she could have for a reasonable expectation of

privacy.

Further, Plaintiff also fails to allege a reasonable expectation of privacy because she only vaguely describes what data Tapad collects in general and "does not identify . . . what type of data was collected from" her that could give rise to such an expectation. *Hernandez-Silva v. Instructure, Inc.*, 2025 U.S. Dist. LEXIS 153186, at *23 (dismissing common-law privacy claims because "[t]he FAC [only] generally alleges that Defendant, through its myriad of products, collects certain data from student users and discloses that data to 'third parties'"). "Given the inherent nature of the internet, a number of courts have found that consumers do not have a reasonable expectation of privacy over their activity in that space." *Thomas v. Papa Johns Int'l, Inc.*, No. 22cv2012 DMS (MSB), 2024 U.S. Dist. LEXIS 84019, at *3 (S.D. Cal. May 8, 2024) (collecting cases holding that activity and interactions on a website, URLs of web pages visited, user/device identifiers, and website browsing activities do not give rise to a reasonable expectation of privacy), aff'd *Thomas v. Papa John's Int'l, Inc.*, No. 24-3557, 2025 U.S. App. LEXIS 15039, at *3-4 (9th Cir. June 18, 2025) (affirming district court's dismissal of claim for intrusion upon seclusion because plaintiff "failed to plead a 'highly offensive' violation under California common law"). Although some courts have found adequately pleaded expectations in information about more sensitive types of internet activity, *see, e.g., In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 947 (N.D. Cal. 2022) (finding adequately alleged expectation of privacy in "search terms, and sensitive websites that plaintiffs visited relating to race, religion, sexual orientation, and health"), Plaintiff has not identified any such information collected from her. Given that fact, this Court should dismiss her common law claim for failure to allege a reasonable expectation of privacy.

**2. Plaintiff Fails to Allege a Highly Offensive Intrusion.**

Separately, this claim should be dismissed because Plaintiff fails to allege a highly offensive intrusion. "Actionable invasions of privacy must be sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right." *Hill*, 865 P.2d at 633. The bar is high, because "[e]ven disclosure of personal information, including social security numbers, does not constitute an 'egregious breach of the social norms' to establish an invasion of privacy claim." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012). Clearly, then, allegations about "the tracking of [one's] interactions with" a website are far short of pleading "'highly offensive' interferences or disclosures that were actionable at common law." *Popa*, 153 F.4th at 791. Furthermore, as the California Supreme Court has recognized, "[t]he plaintiff in an invasion of privacy case . . . must not have manifested by his or her conduct a voluntary consent to the invasive actions of defendant," because "[i]f voluntary consent is present, a defendant's conduct will rarely be deemed highly offensive to a reasonable person so as to justify tort liability." *Hill*, 865 P.2d at 648.

Plaintiff's intrusion upon seclusion claim fails because she has not identified any kind of information Tapad allegedly collected from her that could give rise to an egregious breach of a social norm. And even considering the categories of information she alleges Tapad collects in general, such as device information, IP addresses, and browsing activity, (Compl. ¶¶ 26, 31), her claim still fails because these categories have been held to fall below the standard for egregiousness. *Popa*, 153 F.4th at 791. Separately, as Plaintiff herself alleges, she did not conduct herself "in a manner consistent with an actual expectation of privacy." *Hill*, 865 P.2d at 648.

As an experienced privacy advocate and a tester, she went on to the

Website to expose her information to Tapad's pixels, expecting her information to be collected. Compl. ¶ 21. Such self-inflicted intrusion cannot be deemed as highly offensive. This Court should thus dismiss Plaintiff's common law claim on this ground, too.

## IV. CONCLUSION

For each of the foregoing reasons, the Court should dismiss the Complaint in its entirety with prejudice.

DATED: January 7, 2026

**BRIONES PC**

By: */s/ Joshua Briones*
JOSHUA BRIONES

joshua@brionespc.com
1801 Century Park East
Suite 1840
Los Angeles, CA 90067
Telephone: 858-243-3819

Attorneys for Defendant

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Telecom, certifies that this brief contains 6,493 words, which complies with the word limit of Local Rule 11-6.1.

DATED: January 7, 2026

By: */s/ Joshua Briones*
Joshua Briones